# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

WILLIAM A. WATERS,

      Plaintiff,

v.                                         Civil Action 2:16-cv-742
                                            Magistrate Judge Jolson

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

## OPINION AND ORDER

Plaintiff, William A. Waters, filed this action seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income. For the reasons that follow, Plaintiff's Statement of Errors is **OVERRULED**, and judgment shall be entered in favor of Defendant.

## I. BACKGROUND

### A. Prior Proceedings

Plaintiff filed for Supplemental Security Income on December 20, 2012, alleging disability beginning on July 4, 2012, due to a heart attack, angina, high blood pressure, high cholesterol, and gastroesophageal reflux disease. (*See* Doc. 15 at 1). His application was denied initially on April 20, 2013, and upon reconsideration on July 23, 2013. (*Id.*). Administrative Law Judge Edmund E. Giorgione (the "ALJ") held a hearing on November 25, 2014 (Tr. 11, PAGEID #: 74), after which he denied benefits in a written decision on January 30, 2015 (Doc. 15 at 1). That decision became final when the Appeals Council denied review on May 25, 2016. (*Id.* at 2).

Plaintiff filed this case on July 28, 2016 (Doc. 1), and the Commissioner filed the administrative record on January 6, 2017 (Doc. 11). Plaintiff filed a Statement of Specific Errors on February 21, 2017 (Doc. 15), the Commissioner responded on April 7, 2017, (Doc. 16), and Plaintiff filed a reply on April 24, 2017 (Doc. 17).

### B. The Administrative Hearing

In September 2014, Plaintiff requested a telephone interview in lieu of attending the administrative hearing because he is the caregiver for his elderly mother, who does not travel much, and they had no transportation. (Tr. 122, PAGEID #: 180; Tr. 127, PAGEID #: 185). The ALJ denied Plaintiff's request, stating that there are "transportation alternatives" for travel between Groveport, Ohio (where Plaintiff lives) and Columbus, Ohio (where the hearing was to be held). (Tr. 128, PAGEID #: 186). Consequently, the hearing occurred on November 25, 2014, without Plaintiff present. (Tr. 32, PAGEID #: 90).

Plaintiff's attorney, Justin Zutell, appeared on his behalf. (*Id*.). Mr. Zutell requested that Plaintiff be granted a telephone hearing due to his lack of transportation and the need to care for his elderly mother. (Tr. 35, PAGEID #: 93). The ALJ denied the request, stating that "telephone hearings are problematic." (*Id*. (elaborating that he doesn't "know who [he's] really talking to and it's always very beneficial to be able to observe the claimant")).

Mr. Zutell offered a new piece of evidence, a residual functional capacity questionnaire dated January 11, 2013, from Plaintiff's primary care doctor, Dr. Rita Konfala. (Tr. 36, PAGEID #: 94 (referring to Ex. 9F)). Mr. Zutell noted that Dr. Konfala characterized Plaintiff's prognosis as guarded but stable and limited Plaintiff to sedentary work due to his hypertension, heart attack, hyperlipidemia, GERD, tobacco abuse, dyspnea, and fatigue. (*Id*.). Dr. Konfala also

noted that he was still experiencing shortness of breath and chest pain, despite taking his medication. (Tr. 37, PAGEID #: 95). Mr. Zutell acknowledged certain evidence reflects that Plaintiff walks his dog three times per day for 20 minutes, but other evidence reflects that Plaintiff takes the dog out four times per day, but "he doesn't really walk him much." (Tr. 38, PAGEID #: 96). Finally, Mr. Zutell noted that Plaintiff was fifty years old at the time of filing on December 20, 2012, has a high school education, and past work that includes working as a security guard at Radio Shack and a cashier at Kroger. (Tr. 36–37, PAGEID #: 94–95).

Vocational Expert Lynne Kaufman (the "VE") also testified at the hearing. (Tr. 38, PAGEID #: 96). The VE testified that a hypothetical individual with Plaintiff's age, education, work experience, and RFC could not perform Plaintiff's past work. (Tr. 40–41, PAGEID #: 98–99). However, she testified that there are other jobs the hypothetical individual could do, such as mail sorter, packer, and "some types of cashier jobs…." (Tr. 41, PAGEID #: 99). Limiting the same hypothetical individual to sitting 60 minutes at a time for eight hours out of an eight-hour workday, standing and walking for 10 minutes at a time for one hour out of an eight-hour workday, lifting and carrying only ten pounds occasionally, and carrying no weight frequently, the ALJ found that the individual would be limited to less than a full range of sedentary work. (Tr. 42, PAGEID #: 100).

### C. Relevant Medical Background

Plaintiff was hospitalized and treated with medical therapy for a myocardial infarction from July 4, 2012 to July 6, 2012. (Tr. 203, PAGEID #: 261). Although his discharge summary anticipated compliance problems, Plaintiff subsequently underwent diagnostic testing (*see id.*), cardiological treatment, and physical examinations.

3

During an examination on August 10, 2012, Dr. Konfala noted that Plaintiff was worried about not being healthy enough to care for his elderly mother. (Tr. 261, PAGEID #: 319). His symptoms included chest pain, which Dr. Konfala referred to as "slight twinges." (*Id.*) In terms of exercise, Plaintiff stated that he walked his dog a couple of minutes per day several times per week. (*Id.*). Dr. Konfala noted that Plaintiff was "currently able to do activities of daily living without limitations and able to do housework without limitations." (*Id.*). She also stated that Plaintiff smokes half a pack of cigarettes per day for stress relief. (*Id.*). Plaintiff had normal chest, lung, and cardiovascular exams. (Tr. 262, PAGEID #: 320). However, Dr. Konfala noted that Plaintiff would "likely need cardiology referral once records from hospital are reviewed." (*Id.*).

Dr. Konfala examined Plaintiff again on October 10, 2012. (Tr. 257, PAGEID #: 315). Plaintiff reported chest pain described as "slight twinges" and some palpitations, but stated that he was "feeling well." (*Id.*). He also noted some dyspnea, which he felt may be caused by his medication. (*Id.*). Plaintiff was still smoking a half a pack of cigarettes per day, but he was able to do activities of daily living and his housework without limitations. (*Id.*). Plaintiff again had normal chest, lung, and cardiovascular exams, and Dr. Konfala again noted that Plaintiff would "likely need cardiology referral once records from hospital are reviewed." (Tr. 258, PAGEID #: 316).

Dr. Konfala examined Plaintiff a third time on January 11, 2013. (Tr. 255–56, PAGEID #: 313–14). She described Plaintiff's symptoms as shortness of breath (with exertion and rest) and chest pain and noted "good compliance with treatment, good tolerance of treatment and good symptom control." (Tr. 225, PAGEID #: 313). However, Dr. Konfala noted that Plaintiff

4

continued to smoke. (*Id.*).

The same day, Dr. Konfala completed Plaintiff's RFC questionnaire. (Tr. 351–52, PAGEID #: 409–410). She noted that Plaintiff's initial office visit was on August 10, 2012, and stated that she had seen him every three to four months since then. (Tr. 351, PAGEID #: 409). Dr. Konfala opined that Plaintiff's symptoms of dyspnea, chest pain, and fatigue would occasionally be severe enough to interfere with the attention and concentration required to perform simple work-related tasks. (*Id.*).

Dr. Konfala stated that Plaintiff could not walk a city block without rest or significant pain, can sit for sixty minutes at a time for up to eight hours per day, and can stand for ten minutes at a time for up to an hour per day. (*Id.*). Thus, she opined that Plaintiff is physically capable of working eight hours per day for five days per week only if the job is sedentary. (Tr. 352, PAGEID #: 410). In terms of lifting and carrying, Dr. Konfala determined that Plaintiff could occasionally lift and carry ten pounds or less and could never lift or carry twenty or fifty pounds. (*Id.*).

On April 2, 2013, Margaret G. Smith, Ph.D. conducted a psychological examination of Plaintiff. (Tr. 267, PAGEID #: 325). Plaintiff again reported smoking a half a pack of cigarettes per day. (Tr. 268, PAGEID #: 326). In terms of activities of daily living, Plaintiff reported he:

> lives with his mother in Section 8 Housing for the elderly. He reports that they always get up at about 4:00 in the morning. He takes the dog out and his mother takes her medication. He has to fix her something to eat at that time. They usually go back to bed for an hour or two and then he walks the dog again. . . . If he has any money left over after the bills he goes to the grocery otherwise they watch television. He does do some cleaning, but easily becomes short of breath and has to sit down…. He does housework two or three times a week and cooks two or three times a week. He drives several times a week short distances, "When the car goes … I cross my fingers." He bathes or showers every couple of days. It is difficult for him to get in and out of tubs.

5

(Tr. 269, PAGEID #: 327). Dr. Smith noted that Plaintiff's gait was slow and "it was somewhat difficult for him to stand after he sat for the interview." (*Id*.) (stating "it took him several steps to walk normally").

On April 11, 2013, Dr. Konfala noted that Plaintiff had "no issues or concerns," and his appointment was rescheduled. (Tr. 279, PAGEID #: 337).

Dr. Konfala's report for Plaintiff's May 29, 2013 examination showed mixed findings. Dr. Konfala found that no changes were required to manage Plaintiff's hypertension, which was controlled; Plaintiff's symptoms did not include weakness or edema; Plaintiff continued to have "good compliance with treatment, good tolerance of treatment and good symptom control;" and Plaintiff was "[s]tarting to get some exercise." (Tr. 276, PAGEID #: 334). Plaintiff also had normal posture and gait, and normal chest, lung, and cardiovascular exams. (Tr. 276–77, PAGEID #: 334–35) (observing "normal excursion with symmetric chest walls, quiet, even and easy respiratory effort with no use of accessory muscles and on auscultation, normal breath sounds, no adventitious sounds and normal vocal resonance" and "normal heart sounds, regular rate and rhythm with no murmurs"). However, some of Plaintiff's symptoms persisted, such as intermittent dizziness, shortness of breath, and chest pain. (Tr. 276, PAGEID #: 334). Given Plaintiff's increasing dyspnea on exertion, Dr. Konfala referred Plaintiff to cardiology and advised him to quit smoking. (Tr. 277, PAGEID #: 335).

Plaintiff saw cardiologist Dr. U. Krishnan Marar on November 21, 2013. (Tr. 339, PAGEID #: 397). Dr. Marar noted that Plaintiff had been doing well and had "not had any chest discomfort except for occasional twinges of sharp stabbing precordial pain usually at rest." (*Id*.). Dr. Marar noted that Plaintiff walks his dog for about 20 minutes three times per day, during

6

which he has experienced dyspnea but no chest discomfort. (*Id*.). Dr. Marar observed that Plaintiff continued to smoke a half pack of cigarettes daily and that the exam room smelled strongly of tobacco. (*Id*.). Plaintiff denied having any orthopnea, palpitations, presyncope or syncope or pedal edema. (Tr. 339, PAGEID #: 397). Dr. Marar found Plaintiff had no edema, normal gait and muscle strength, and progressive dyspnea on exertion. (Tr. 341, PAGEID #: 399). Dr. Marar opined that Plaintiff's dyspnea could be an angina equivalent or underlying lung disease and found no evidence of cardiac decompensation. (*Id*.). Dr. Marar found Plaintiff's blood pressure to be well controlled. (*Id*.). Finally, Dr. Marar advised that Plaintiff could discontinue taking Effient because there was no clear indication for it and there was an associated bleeding risk. (*Id*.).

Plaintiff visited Ohio State University cardiology on November 21, 2013. (Tr. 322, PAGEID #: 380). An EKG showed lateral ischemia, which had been noted on prior EKGs. (Tr. 324, PAGEID #: 382). Plaintiff was reported to have been "doing well" since his last visit and had "not had any chest discomfort except for occasional twinges of sharp, stabbing precordial pain usually at rest and lasting for a few seconds." (Tr. 322, PAGEID #: 380). He reported "walk[ing] his dog for about 20 minutes three times a day," during which he experienced dyspnea but no chest discomfort. (*Id*.). Plaintiff continued to smoke about a half pack of cigarettes per day. (*Id*.). Plaintiff "denied any orthopnea, palpitations, presyncope or syncope or pedal edema." (*Id*.).

Plaintiff was examined on December 11, 2013 at Heart of Ohio Family Health Centers, where he reported symptoms of occasional dizziness, occasional chest pain, and shortness of breath with exertion. (Tr. 319, PAGEID #: 377). Plaintiff's current treatment of exercise was

7

observed to be "very limited," consisting of taking the dog outside four times per day without much walking. (*Id.*). It was noted that Plaintiff "[g]ets winded easily." (*Id.*). Again, there was "good compliance with treatment, good tolerance of the treatment and good symptom control." (*Id.*). Plaintiff continued to smoke. (*Id.*). Plaintiff had normal posture and gait, normal muscle strength and tone, no edema, and normal chest, lung, and cardiovascular exams. (Tr. 320, PAGEID #: 378).

On January 22, 2014, Plaintiff's echocardiogram showed normal systolic function, with an ejection fraction of 55%, and multiple regional wall abnormalities. (Tr. 293, PAGEID #: 351). During a February 6, 2014 examination, Dr. Marar made many of the same observations he had made on November 11, 2013: he noted that Plaintiff had been doing well and had not had any chest discomfort except for occasional twinges of sharp stabbing precordial pain usually at rest; that Plaintiff walks his dog for about 20 minutes three times per day, during which he has experienced dyspnea but no chest discomfort; and that Plaintiff continued to smoke. (Tr. 346, PAGEID #: 404). He also stated that Plaintiff resumed taking Effient because he felt "unwell" after stopping it, but Dr. Marar warned him of the increased bleeding risk and explained to him that there was not a strong indication for taking it. (*Id.*).

Plaintiff visited Heart of Ohio Family Health Centers again on May 29, 2015. (Tr. 317, PAGEID #: 375). The record states that Plaintiff required no changes in management during his appointment five months prior, but he continued to have occasional dizziness and shortness of breath with exertion. (*Id.*). Plaintiff reported occasional chest pain but had no edema. (*Id.*). Although the report notes that Plaintiff's treatment included exercise, it was characterized as "very limited. Takes dog out about 4x per day. Does not walk much with the dog. Gets winded

8

easily." (*Id*.). Once again it was noted that Plaintiff had "good compliance with treatment, good tolerance of treatment and good symptom control." (*Id*.). Plaintiff continued to smoke a half a pack of cigarettes per day and stated that he had "shown up 3 times" for a stress test but had been "turned away." (*Id*.). The report does not indicate why Plaintiff was unable to take the stress test. (*See id*.). A review of Plaintiff's systems showed chest pain, but no dyspnea on exertion, and a chest and lung exam revealed "wheezes throughout." (Tr. 317–18, PAGEID #: 375–76).

### D. The ALJ's Decision

In his decision, the ALJ stated the following concerning Plaintiff's attendance at the hearing:

> [T]he claimant was well aware of the time, date and location of the hearing. However, the claimant requested to appear telephonically due to alleged transportation difficulty and the need to care for an elderly mother. The claimant's request to appear telephonically was denied in writing on September 23, 2014 since there are a plethora of transportation alternatives for travel between Groveport, a nearby suburb, to the hearing office in Columbus. More importantly, an in person hearing is essential for me to evaluate the credibility of the claimant's allegations. The claimant had more than two months to secure transportation and someone to care for his mother. Counsel advised again that claimant received notice, but maintained that the claimant is unable to drive or leave his mother alone, which is inconsistent with the evidence in the record. In fact, the record indicates that the claimant is able to drive and grocery shop, which apparently involve leaving his elderly mother at home. I find that the claimant constructively waived his right to appear and testify and a decision on the merits is appropriate.

(Tr. 16, PAGEID #: 74) (citations omitted).

Upon examination of the record, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 20, 2012, the application date, and has the following severe impairments: coronary artery disease status post myocardial infarction, hypertension, obesity, and depression. (Tr. 18, PAGEID #: 76). The ALJ found that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment (Tr. 19,

9

PAGEID #: 77), and determined that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. 416.967(b) except:

> lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk for 6 hours in an 8 hour workday; sit for 6 hours in an 8 hour workday; unlimited pushing and pulling except as defined by the ability to lift/carry; frequent climbing of ramps and stairs; frequent crawling; occasional climbing of ladders, ropes or scaffolds; must avoid exposure to concentrated extremes of heat, wetness and humidity; no exposure to unprotected heights or dangerous machinery; and will need simple instructions and be able to perform simple, routine and repetitive tasks with no strict time or production demands in a relatively static work environment with static work processes and procedures.

(Tr. 21, PAGEID #: 79).

In formulating this RFC, the ALJ noted that Plaintiff's "high functioning activities of daily living belie his debilitating physical and mental allegations." (Tr. 23, PAGEID #: 81). The ALJ referred to Plaintiff's caring for his elderly mother, which includes preparing meals, cleaning, and grocery shopping. (*Id*.). Further, the ALJ stated that "[w]hile the claimant alleged shortness of breath, the record indicates that the claimant walks his dog about an hour a day and exercises." (*Id*.).

The ALJ assigned "little weight" to Dr. Konfala's opinion that Plaintiff should be limited to sedentary activity. (*Id*.). The ALJ stated:

> Dr. Konfala's opinion is inconsistent with her generally normal physical examination findings, her own recommendations that the claimant exercise, cardiological treatment notes showing that the claimant is doing well and diagnostic testing. Dr. Konfala's opinion is also inconsistent with the claimant's high functioning activities of daily living that include care for an elderly parent and daily walks of up to an hour per day.

(*Id*.). Given Plaintiff's RFC, the ALJ found Plaintiff is unable to perform any past relevant work. (Tr. 24, PAGEID #: 82).

The ALJ noted that Plaintiff was 50 years old (and thus an individual closely approaching

advanced age) at the time he filed his application, has a high school education, and is able to communicate in English. (Tr. 24, PAGEID #: 82). The ALJ found that the transferability of Plaintiff's job skills was not material to the disability determination, and considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (*Id.*). Based upon these findings, the ALJ decided that Plaintiff has not been under a disability as defined in the Social Security Act since December 20, 2012, the date the application was filed. (Tr. 25, PAGEID #: 83).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)). "Therefore, if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

## III. DISCUSSION

Plaintiff asserts two assignments of error. First, Plaintiff argues that "[t]he RFC determination is not supported by substantial evidence because the ALJ's rejection of treating

physician Dr. Konfala's opinion was not consistent with the standards of the treating physician rule." (Doc. 15 at 1). Next, Plaintiff contends that the ALJ's reasons for finding that he waived his right to a hearing were not based on substantial evidence. (*Id.*).

    **A.    Whether The ALJ Erred In Weighing Dr. Konfala's Opinion**

Two related rules govern how an ALJ is required to analyze a treating physician's opinion. *Dixon v. Comm'r of Soc. Sec.*, No. 3:14-cv-478, 2016 WL 860695, at *4 (S.D. Ohio Mar. 7, 2016). The first is the "treating physician rule." *Id.* The rule requires an ALJ to "give controlling weight to a treating source's opinion on the issue(s) of the nature and severity of the claimant's impairment(s) if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 384 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527(c)(2)) (internal quotation marks omitted). Closely associated is "the good reasons rule," which requires an ALJ always to give "good reasons . . . for the weight given to the claimant's treating source opinion." *Dixon*, 2016 WL 860695, at *4 (quoting *Blakely*, 581 F.3d at 406 (alterations in original)); 20 C.F.R. § 404.1527(c)(2). The treating physician rule and the good reasons rule together create what has been referred to as the "two-step analysis created by the Sixth Circuit." *Allums v. Comm'r of Soc. Sec.*, 975 F. Supp. 2d 823, 832 (N.D. Ohio 2013).

In this case, the ALJ provided two primary reasons for assigning "little weight" to Dr. Konfala's opinion that Plaintiff should be limited to sedentary work. (Tr. 23, PAGEID #: 81). First, the ALJ found that the objective medical evidence since Plaintiff's July 2012 heart attack demonstrated his ability to do light work. (Tr. 22, PAGEID #: 80). More specifically, the ALJ

12

relied on Dr. Marar's examination findings, which noted that Plaintiff had been doing well and had not had any chest discomfort except for occasional twinges while at rest. (*Id*.). He also cited Dr. Marar's observations that Plaintiff had a normal gait and muscle strength, no edema, no evidence of cardiac decompensation, well-controlled blood pressure, and experienced dyspnea but no chest discomfort while walking his dog for twenty minutes three times per day. (*Id*.). The ALJ also noted that Plaintiff's echocardiogram showed normal systolic function with an ejection fraction of 55%. (*Id*.). Finally, the ALJ looked to Dr. Konfala's own examination findings, which reflect normal gait, posture, and muscle strength, with no edema in the lower extremities, and reflect in May 2013 that Plaintiff was starting to get some exercise. (*Id*.).

Second, the ALJ found Dr. Konfala's opinion inconsistent with Plaintiff's activities of daily living. The ALJ cited Dr. Smith's statements that Plaintiff cares for his elderly mother, which includes preparing meals, cleaning, and shopping for groceries. (Tr. 23, PAGEID #: 81). The ALJ likewise observed that Plaintiff takes daily walks of up to an hour per day. (*Id*.).

Plaintiff argues that the ALJ missed the forest for the trees. (Doc. 15 at 8) (asserting that the ALJ "should have focused on the larger picture presented by the evidence as a whole"). Specifically, Plaintiff claims that the ALJ overlooked treatment reports demonstrating that he suffers from occasional dizziness, shortness of breath, and wheezing, and should have considered the consultative psychologist's observation that he had a slow gait and some difficulty standing and walking. (*Id*. at 8–9). Plaintiff also argues that the ALJ lacked the expertise to find that the echocardiogram was inconsistent with Dr. Konfala's opinion, and the reviewing source, Dr. Marar, indicated that the result warranted further testing. (*Id*. at 9) ("[A]fter noting these findings along with an examination in February 2014, Dr. Marar indicated that Waters needed to

undergo a cardiac stress test."). Finally, Plaintiff claims that "the treatment notes indicate that Waters reported he <u>did not exercise</u> other than walking his dog, and his reports to physicians about walking his dog indicate that even when walking his dog for shorter periods that might add up to a total of an hour per day, he experienced shortness of breath and became 'winded easily.'" (*Id*. at 11) (emphasis in original).

Plaintiff's arguments are without merit. Here, the ALJ did not deny that Plaintiff suffered from symptoms such as shortness of breath, fatigue, and chest pain. (Tr. 22, PAGEID #: 80). Rather, the ALJ found that, to the extent that the symptoms existed, they were not debilitating and did not limit Plaintiff to sedentary work. (*Id*.). Moreover, despite Plaintiff's argument to the contrary, the ALJ did not attempt to interpret the echocardiogram on his own. As Defendant argues, Dr. Marar and the state agency medical consultants reviewed the echocardiogram, and their opinions were part of the record reviewed by the ALJ. (*See, e.g.*, Tr. 348, PAGEID #: 406; Doc. 16 at 12–13). Finally, as Plaintiff's counsel acknowledged at the hearing, there is conflicting evidence in the record as to how much Plaintiff exercised. *Compare* (Tr. 339, PAGEID #: 397) (noting that Plaintiff walks his dog for about 20 minutes three times per day) with (Tr. 317, PAGEID #: 375) (stating that Plaintiff's exercise is "very limited. Takes dog out about 4x per day. Does not walk much with the dog"). The evidence of limited exercise, or that Plaintiff may tire when performing activities of daily living, does not alone warrant reversal. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) ("Even if the evidence could also support another conclusion, the decision of the [ALJ] must stand if the evidence could reasonably support the conclusion reached.") (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

As set forth above, the ALJ noted that Dr. Konfala was a treating physician but assigned little weight to her opinion because he found it inconsistent with the other substantial evidence in the record. Because the ALJ gave good reasons for the weight assigned to Dr. Konfala's opinion, remand is not warranted on this basis. *See Coldiron v. Comm'r of Soc. Sec.*, No. 09-4071, 2010 WL 3199693, at *5 (6th Aug. 12, 2010) (finding that the ALJ's discussion of other record evidence showed that the treating physician's opinion lacked the support and consistency required to compel controlling weight).

### B. Whether The ALJ Erred In Refusing To Allow Plaintiff To Appear Telephonically

Next, the Court addresses whether the ALJ erred in refusing to allow Plaintiff to appear telephonically. The ALJ has the discretion to allow appearance at a hearing by telephone. *See Decker v. Comm'r of Soc. Sec.*, No. 2:12-cv-454, 2013 WL 4830961, at *4 (S.D. Ohio Sept. 10, 2013) ("[T]he final determination regarding how the testimony will be heard ultimately lies with the ALJ[.]"). The relevant regulation provides that the ALJ will allow a plaintiff to appear telephonically if the ALJ determines that "extraordinary circumstances" exist which prevent the plaintiff from appearing in person. 20 C.F.R. § 416.1436(c)(i),(ii). Here, the ALJ found that the lack of transportation and care for Plaintiff's mother did not constitute extraordinary circumstances, and it was within his discretion to do so. *Cf. Decker*, 2013 WL 4830961, at *4

Defendant admits the ALJ was "misleading" when he stated that Plaintiff "constructively waived his right to appear…." (Tr. 16, PAGEID #: 74). The Court agrees. Plaintiff did, in fact, appear through a designated representative (his counsel), which the regulations allow. *See* 20 C.F.R. § 416.1450(a). Thus, the ALJ allowed Plaintiff an opportunity to be heard, and the Court will not reverse on this basis.

15

## IV. CONCLUSION

Based on the foregoing, Plaintiff's Statement of Errors is **OVERRULED** (Doc. 15) and judgment is entered in favor of Defendant.

IT IS SO ORDERED.


Date:  August 25, 2017                              /s/ Kimberly A. Jolson
                                                    KIMBERLY A. JOLSON
                                                    UNITED STATES MAGISTRATE JUDGE